Francis L. Cherniske et al. *v.* Theresa M. Jajer, Executrix (Estate of Joseph J. Cherniske)

House, C. J., Loiselle, Bogdanski, Longo and Barber, Js.

Argued February 11—decision released August 10, 1976

*Thomas F. McDermott, Jr.,* with whom was *Richard C. Gradowski,* for the appellant (defendant).

*John L. Gerardo,* with whom, on the brief, was *William T. Barrante,* for the appellees (plaintiffs).

Longo, J. The following facts are set out in the briefs of the parties in accordance with Practice Book §§ 631A and 632A: Joseph J. Cherniske,

hereinafter referred to as the testator, died at the age of eighty-one years, leaving an estate of $133,260 in real and personal property. He was survived by the issue of his first marriage, Anna Lemelin, and the issue of his second marriage, Francis L. Cherniske, Martin S. Cherniske and Theresa M. Jajer. In a will dated July 13, 1971, the testator left the bulk of his estate to the four children in equal shares, and named Francis as executor. Four months later, on November 4, 1971, the testator executed a second will which is the subject of this dispute. The November will expressly revoked all previous wills, left the bulk of the estate to Anna Lemelin and Theresa M. Jajer in equal shares, and appointed Theresa as executrix. The testator further provided in paragraph IV of the will: "I have also purposely omitted any devise or bequest to my sons, Francis L. Cherniske and Martin S. Cherniske, because I have given them much during my lifetime." The plaintiffs in this case are Francis and Martin, and the defendant is Theresa M. Jajer as executrix.

Following a contested hearing, the testator's will of November 4, 1971,[1] was admitted to probate by decree of the Probate Court for the district of New Milford. From that decree, the plaintiffs appealed to the Superior Court alleging failure of

---

[1] The relevant provisions of the will executed on November 4, 1971, are as follows:

"I. I direct my Executrix, hereinafter named, to pay all my just debts, funeral expenses and the expenses of administration of my estate.

II. All the residue of my estate, of whatever character and wherever situated, I give, devise and bequeath to my daughters, Theresa M. Jajer and Ann Lemilen [sic], in equal shares, absolutely, or to the issue of either deceased daughter, per stirpes, absolutely.

III. I have purposely omitted any devise or bequest to the children of my deceased children, Catherine Fetcho and Joseph J.

due execution, lack of testamentary capacity, and undue influence upon the testator by Theresa M. Jajer and her husband, Vincent. The case was tried before a jury which answered certain interrogatories and rendered a verdict for the plaintiffs. After a hearing the trial court denied the defendant's motion to set aside the verdict and rendered judgment setting aside the decree of the Probate Court. The defendant has appealed to this court "from the judgment rendered therein or from the decision of the court denying the motion to set the verdict aside." The defendant claims that there was not sufficient evidence presented to support the verdict, that the court erred in its ruling on the admissibility of certain evidence, that the court erred in its failure to charge the jury as requested by the defendant, and that the jury's answers to several interrogatories were inconsistent with its verdict.

We hold that the trial court did err in its ruling on the admissibility of certain evidence and that holding is dispositive of this appeal. It is necessary, therefore, to consider only the following evidence presented at trial: Less than four months after the execution in July of his first will, the testator informed the attorney who had prepared that

Cherniske, Jr., or to the widow of Joseph J. Cherniske, Jr., as they are well provided for and it is my intention that none of them shall take any part of my estate. My son, James Cherniske, died leaving no wife nor any children.

IV. I have also purposely omitted any devise or bequest to my sons, Francis L. Cherniske and Martin S. Cherniske, because I have given them much during my lifetime.

V. I appoint my daughter, Theresa M. Jajer, Executrix of this my last Will and I direct that no bond be required for the performance of her duties. The Executrix is hereby granted all the basic powers in the Connecticut Fiduciary Powers Act, Connecticut General Statutes § 45-100e."

will that he desired to execute a second will disinheriting Francis and Martin. The testator indicated that the change was being made because each of his sons already owned valuable real property. In 1955, the testator had sold much of his farmland to Francis for $30,000, and he had also sold a parcel of land to Martin for $8000. There was evidence that Vincent and Theresa M. Jajer had told the testator that Francis' land had greatly appreciated in value; and that Theresa had also told the testator that Martin had inherited a house from his deceased sister, Catherine, which was not true. Also, the testator mistakenly believed that Martin's purchase of land from him had been made with money provided by the testator's second wife, Martin's mother. After the will of November 4, 1971, was drafted, in explaining the contents of paragraph IV, the testator told his daughter Anna that he had in fact excluded Francis because Francis' farm had become very valuable, and had excluded Martin because he owned Catherine's house and a parcel of land.

Several witnesses testified to the value of the parcels of real property owned by Francis and Martin. A farmer from the area in which the parcels were located testified that the prices paid for the two parcels were the fair market value at the time of purchase. The plaintiffs' expert witness, an appraiser for a farm credit association who had appraised Francis' land in 1968 for mortgage purposes, testified that the property owned by Francis was worth $65,000 at the time of the testator's death. The defendant's expert, a realtor and insurance salesman who had just appraised the two parcels the day before he appeared as a witness, testified that at the time of the testator's death the value

of Francis' parcel was $223,400 and the value of Martin's was $68,640. To prove the value of Francis' land at the time of the testator's death, the plaintiffs offered a newspaper article which appeared on January 30, 1970. Listed in the article were the previous year's assessments of value of area property and the new assessments made in a subsequent revaluation. The defendant objected to the admission into evidence of the article on the ground that it was not "the proper source of putting in value." The court overruled the objection, noting that although it was possible to produce the assessor to testify, under the "more modern view of evidence" the newspaper article was acceptable. An exception to the court's ruling was duly taken by the defendant.

The defendant "is confined in this court to the ground of objection put forward by her in the trial court." *Salvatore* v. *Hayden,* 144 Conn. 437, 443, 133 A.2d 622, cited in *Rogers* v. *Cooley Chevrolet Co.,* 162 Conn. 619, 620–21, 295 A.2d 562. The objection that the article was not "the proper source" and the reasons given by the court for overruling the objection indicate that the objection made at trial was sufficient to alert the trial court to the claim, subsequently made on appeal, that the newspaper article was hearsay and not the "best evidence."

As a rule, hearsay evidence in the form of written or oral statements is inadmissible. *General Motors Acceptance Corporation* v. *Capitol Garage, Inc.,* 154 Conn. 593, 597, 227 A.2d 548. Exceptions to the rule have been created "where the statements are made under conditions deemed to render them equal in reliability and trustworthiness" to those made under "the sanction of an oath and the test

of cross-examination." Ibid.; *Tough* v. *Ives,* 162 Conn. 274, 284, 294 A.2d 67. There is no exception which would permit the admission of the newspaper article; the safeguards of the oath and opportunity to cross-examine are not present, as they would be had the assessor himself testified as to the assessed value of the Cherniske property. See McCormick, Evidence (2d Ed.) § 245. As an exhibit offered in this case, the newspaper article was clearly hearsay and should have been excluded. This is a well-settled rule of evidence. See 29 Am. Jur. 2d, Evidence, §§ 884, 885; annot., 55 A.L.R.3d 663, "Admissibility of Newspaper Article as Evidence of the Truth of the Facts Stated Therein."

The court's ruling also violated the so-called best evidence rule. This case is analogous to that of *Brown* v. *Connecticut Light & Power Co.,* 145 Conn. 290, 295–96, 141 A.2d 634, in which a newspaper article purportedly containing the substance of a public utilities commission order was offered. In that case, we held that either the original order or a duly certified copy of it was required as the best evidence of the order. Ibid. As the tax assessments are matters of public record; see General Statutes § 12-55; they are subject to the operation of the best evidence rule. See 29 Am. Jur. 2d, Evidence, § 482. No valid excuse was given in this case for the failure to present the actual records or certified copies thereof. Therefore, the newspaper article was clearly inadmissible.

The newspaper article was offered as evidence of the value of the property as assessed for tax purposes and, as the assessed value was not otherwise established, the evidence contained in the article

was not cumulative in nature.. See *Mei* v. *Alterman Transport Lines, Inc.*, 159 Conn. 307, 316, 268 A.2d 639. The issue of value was contested by the parties in this case and the assessed value appearing in the article clearly favored the plaintiffs' claim as to value. In view of the evidence that the testator had decided to disinherit his sons because their property had greatly appreciated in value and that he had been so informed by parties accused of unduly influencing him, we find that the issue of value was material and that the erroneous admission of the article was clearly harmful to the case of the proponent of the will, the defendant administratrix. A new trial is therefore required.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.